So Ordered.

Dated: November 19, 2026

Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Kimberley A Thompson,

Debtor.

Case No. 25-24511-rmb

Chapter 7

## DECISION AND ORDER

After debtor Kimberley Thompson complained that her counsel had filed documents on her behalf without her authorization, the United States trustee investigated the matter. The UST discovered that Thompson's counsel, Brett Pfeifer of Credit Solutions, S.C., had filed schedules, which included a declaration that purported to be signed by Thompson under penalty of perjury, without obtaining Thompson's signature. This information led the Court to issue an order to show cause why Credit Solutions should not be sanctioned for violating Federal Rule of Bankruptcy Procedure 9011 and this Court's Local Rules. The Court held an evidentiary hearing on November 2, 2026, and now issues this decision and order imposing sanctions for the firm's violations of the rules and the bankruptcy process.

## FINDINGS OF FACT

During the evidentiary hearing on November 2, 2026, the Court heard testimony from Vince Morelli, an auditor with the UST's office, and from Arnold Lueders and Brett Pfeifer of Credit Solutions. The Court finds the following facts based on the evidence presented at the hearing.

On August 8, 2025, Lueders filed a chapter 13 petition on Thompson's behalf. Dkt. No. 1. The document included an electronic signature for Thompson indicating that she had signed the petition under penalty of perjury on August 8. Id. at 6. However, Thompson actually signed the petition on August 1, 2025. Dkt. No. 144, Ex. 1. Lueders testified that he knowingly changed the date on the petition from the date that appeared when Thompson signed it to reflect a different date. According to Lueders, he was under the impression that the date a petition is executed should match the date that the petition is filed with the Court. Lueders' only basis for this belief was purported discussions he has had with others regarding bankruptcy filing practices. He did not say who gave him the advice that it is permissible to change any information on a document signed under penalty of perjury, nor did he offer any legal authority for his position.

On August 22, 2025, Pfeifer filed schedules and a chapter 13 plan on Thompson's behalf. Dkt. Nos. 11-13. The documents included Thompson's electronic signature with a date of August 22, 2025, and the declaration that accompanied the schedules purported to be signed under penalty of perjury. However, when Pfeifer filed the documents, Thompson had not yet signed them. Someone with Credit Solutions sent the documents to Thompson on August 21,

2025, but she did not sign them until August 27, 2025, five days after Pfeifer filed them with her signature. Dkt. No. 144-2, Ex. 2 at 52. Pfeifer blamed a miscommunication among his office staff for the filing of the documents without Thompson's signature. He did not say why he filed the documents without verifying himself that she had in fact signed them.

Later in the case, Pfeifer filed four amendments to Schedules I and J, each of which was accompanied by a declaration purporting to have been signed by Thompson under penalty of perjury. Dkt. Nos. 45 (filed 2/16/2026), 55 (filed 4/14/2026), 61 (filed 4/27/2026), 71 (filed 5/26/2026). Thompson's electronic signature was included on each of the declarations, but Credit Solutions did not produce evidence that Thompson had signed any of them, either before or after they were filed.

The amended schedules accompanied amendments to the chapter 13 plan. The plan as originally proposed would require monthly payments of $535 per month, but the filed claims rendered the plan not feasible at that monthly payment. Dkt. No. 13. The first amended plan increased the payment to $575 per month, which Thompson agreed she could afford. Dkt. No. 33. The second amended plan increased the monthly payment to $650. Dkt. No. 54. It is unclear whether Thompson approved the amendment, but she quickly requested that the payment be adjusted back to $575 per month. So Pfeifer amended the plan back to $575 per month, which drew an objection from the chapter 13 trustee for lack of feasibility. Dkt. No. 60. Pfeifer filed another amended plan on May 26, 2026 increasing the

payment to $655 per month. Dkt. No. 70. Thompson was upset by the last amendment, and she filed a letter complaining that she could not pay $655 per month. Dkt. No. 76.

Pfeifer testified that despite Thompson's later complaint, he believed she had authorized the filing of the amended plan and amended Schedules I and J on May 26, 2026. The Court does not find this testimony to be credible. According to Pfeifer, he maintains client files that memorialize every written and oral communication with his clients. Thompson waived her privilege for communications with Credit Solutions regarding this case, and the Court received an exhibit that included a portion of the Credit Solutions log of communications with Thompson. See Dkt. No. 147, Ex. 113.

That log includes information suggesting that Thompson may have agreed to the plan amendments filed on February 16 and April 14, 2026. It also indicates that Thompson complained about the $650 per month payment in the April 14 plan and authorized the filing of an amended plan changing the payment back to $575. After the trustee objected to that plan, Pfeifer sent an email to Thompson on May 20, 2026 that stated, "We have resolved the trustee's objection to confirmation with a deadline to file a new plan that pays all claims required to be paid. As I discussed with you previously, your plan will need to be $650.00 per month and as I sent you, your budget shows you can afford the $650. I will be filing the change unless I hear from you within 5 days." Dkt. No. 147 at 3. The log does not reflect any further communication with Thompson until June 5, 2026, after Pfeifer filed an amended

plan and amended Schedules I and J on May 26. The lack of any memorialized communication with Thompson approving the May 26 plan and the May 20 note to her indicating that Pfeifer would file the amended plan and schedules unless he heard from her suggest that Thompson did not, in fact, authorize the filing of the May 26 amended plan.

As to the amended schedules, regardless of whether she authorized the amendments, she did not sign any of them. In response to the UST's motion to examine the fees charged to the debtor, Pfeifer admitted that "signatures were not obtained prior to filing the schedules or amended schedules." Dkt. No. 130 at 1. Pfeifer testified that he had determined at some point that the applicable rules did not require a signature from the debtor, and that he could file documents containing a debtor's signature under penalty of perjury so long as the debtor orally authorized the filing, even if the debtor had never seen the actual document that purported to be signed under penalty of perjury.

The UST presented evidence of similar issues in other cases in which Credit Solutions attorneys represent the debtors. Lueders and Pfeifer testified that they regularly alter documents signed by debtors before they are filed. The most common alteration they make is changing the date that the debtor signed a document, so that the date reflects the date the document is filed rather than the date the debtor actually signed it. The UST also presented evidence that the answer to question 20 on the petition often was changed after the debtor signed it, and in one case the version of the Debtor's Rebuttal of Presumption of Abuse signed

by the debtor was blank, with the numbers filled in after the debtor signed it. Dkt. No. 146, Ex. 112 at 5-7. Lueders blamed a software issue for the changes to question 20 on many petitions, but he did not explain why he never verified that the version he filed was the same version the debtor had signed. Neither Lueders nor Pfeifer provided any explanation regarding the changes to the Rebuttal of Presumption of Abuse.

## DISCUSSION

"[A] federal court has the inherent power to sanction for conduct which abuses the judicial process." Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993); see also Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."). In addition, section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Federal Rules of Bankruptcy Procedure 1008 and 9011 and Local Rule 5005-2 also govern the issues here. Bankruptcy Rule 1008 requires that "[a] petition, list, schedule, statement, and any amendment must be verified or must contain an unsworn declaration under 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008. Bankruptcy

Rule 9011 provides in relevant part that by filing a document with the Court, the attorney filing the document represents that "the allegations and factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b)(3).

Local Rule 5005-2 provides that an attorney using the Court's CM/ECF system to file a document including an electronic signature that is an "/s/" followed by the person's printed name certifies that the person has signed or consented to the filing of the document. Local Rule 5005-2(a)(1)(A). The filing attorney also certifies, under penalty of perjury, that the filing attorney "has custody of the document with the signing party's original signature under one of the approved methods described in subsection (a) [of Local Rule 5005-2] or if the signing party is also a CM/ECF participant, has permission to include the signing party's signature by '/s/'." Local Rule 5005-2(b)(1)(B). Under this rule, unless the signing party is also a CM/ECF participant, the attorney must have the party's original signature before filing a document that includes the person's printed signature.

There are two main issues with the conduct of counsel in this case. First, Pfeifer filed documents on Thompson's behalf without authorization. As noted, the Court finds that the amended plan and amended schedules filed on May 26, 2026 were filed without authorization from Thompson. She had previously expressed that she did not want to be in a chapter 13 plan with a payment higher than $575. Yet on May 20, Pfeifer sent her an email stating that he would file an amended plan with a plan payment of $655 unless he heard from her. This type of "negative notice" was not sufficient authorization under the circumstances. Thompson did

express a desire to have a confirmed chapter 13 plan to address her debts, but she did not approve the terms of the amended plan.

A client must be consulted regarding the means necessary to achieve the client's objective, particularly if the client previously expressed dissatisfaction with the means recommended by the lawyer. *See* Wis. Sup. Ct. R. 20:1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued."); Wis. Sup. Ct. R. 20:1.4(a)(2) (A lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished[.]"). If the client's objective cannot be achieved using the means authorized by the client, then the attorney should counsel the client as to their options. An attorney should not undertake means of achieving the objective not authorized by the client. The filing of a chapter 13 plan, or an amended plan, is a request that the court confirm the plan. When filed by an attorney on behalf of a client, it is a representation by the attorney that the client wants the plan confirmed. Thompson did not want the May 26 plan confirmed, because the proposed monthly payment was more than she wanted to spend. Pfeifer's filing of the document was a violation of Rule 9011 and an abuse of the bankruptcy process.

Second, the attorneys filed many documents that included an "/s/" followed by the debtor's printed name, but the documents either were altered from the versions signed by the debtors or were not signed by the debtors at all. Neither practice is acceptable. A document signed under penalty of perjury for filing with the

bankruptcy court includes information unique to that case and that debtor. Documents signed under penalty of perjury must be filed exactly as they are signed because that is the information to which the signer attested. Any alteration means that the signer has not attested to the new or changed information. And filing a document that purports to be signed under penalty of perjury without the debtor having signed the document is similarly unacceptable. Both practices violate Rules 1008 and 9011 and Local Rule 5005-2 and are an abuse of the bankruptcy process.

Courts are unanimous that debtors must sign petitions, schedules, and other verified documents before an attorney may file the document with a printed signature for the debtor. In re Whitehill, 514 B.R. 687, 691-92 (Bankr. M.D. Fla. 2014) ("[A] debtor's attorney simply cannot file a document with the statement that his client has affirmed the truth of the matters asserted in the pleading without the client actually having reviewed the document."); In re Bradley, 495 B.R. 747, 780 (Bankr. S.D. Tex. 2013) ("[T]here are no circumstances that would ever justify an attorney filing a petition, any Schedule, or a SOFA without first obtaining the debtor's signature[.]"); In re Phillips, 317 B.R. 518, 524 (B.A.P. 8th Cir. 2004), aff'd in part, 433 F.3d 1068 (8th Cir. 2006) ("The petition [the attorney] filed did not have the debtor's original signature and therefore lacked a verification of the facts. With no verification, the factual contentions have no evidentiary support and thus the petition violates Rule 9011(b)(3)."); see also In re Washington, 663 B.R. 685, 692 (Bankr. D.S.C. 2024) ("[A] debtor must have an opportunity to review any document before the debtor can meaningfully authorize the attorney to electronically affix the

debtor's signature to it.") (emphasis in original). Pfeifer's apparent construction of the rules to allow the filing of verified schedules and other documents without the debtor first having signed the documents is baffling at best and has no basis in the law. The same goes for Lueders' practice of changing dates and information on verified documents.

Though the Court is empowered to issue a wide range of sanctions for this serious misconduct, the Court is guided by the limitations in Bankruptcy Rule 9011 that a sanction should be "limited to what suffices to deter repetition of the conduct or deter comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(4)(A). With the aim of deterring repetition of similar conduct in the future by the attorneys at Credit Solutions and deterring comparable conduct by other attorneys in this district, the Court will issue a non-monetary sanction that has three components.

First, the attorneys at Credit Solutions must break the habit of filing documents that have been altered after the debtors signed them or that have not been signed at all. Local Rule 5005-2 already requires the firm to retain documents signed by debtors. *See* Local Rule 5005-2(c). To assess the firm's compliance with the requirement going forward, for a period of 13 months the Court will require Pfeifer, Lueders, and any other attorney employed by or affiliated with Credit Solutions to file the original signature for every document signed by a debtor under penalty of perjury. This includes but is not limited to petitions, schedules, statements and any other document required to be verified pursuant to Bankruptcy

Rule 1008 or any document that includes an unsworn declaration signed pursuant to 28 U.S.C. § 1746. Counsel may file such documents with an "/s/" followed by the debtor's printed name if it is convenient to do so using counsel's filing software, but counsel shall immediately file a supplement that includes a scanned copy of the debtor's "wet ink" signature or the complete digital signature, including, where applicable, the "audit trail" or similar documentation for any software used by the debtor to digitally sign the document.

Second, the attorneys at Credit Solutions must break the habit of filing amended plans that include terms not expressly authorized by the debtor. To assess the firm's compliance with the requirement that a debtor authorize amendments or modifications to their chapter 13 plans, for a period of 13 months the Court will require Pfeifer, Lueders, and any other attorney employed by or affiliated with Credit Solutions to obtain express authorization from debtors before filing amended or modified chapter 13 plans and to document such authorization. The authorization shall be documented in a manner that allows the UST or the case trustee to audit the firm's compliance with this order without the need to reveal privileged communications or attorney work product. Pfeifer, Lueders, and any other attorney employed by or affiliated with Credit Solutions must file a declaration with every amended or modified chapter 13 plan stating that the filing attorney has documented authorization from the debtor to file the amended or modified plan.

The Court recognizes that certain amendments may not require express or specific authorization from the debtor, such as when the amendment corrects a typographical error in the plan or addresses a nonsubstantive issue. In those cases, the attorney may file the amended or modified plan without express, documented authorization for the amendment or modification, but the filing must include a declaration that states counsel's belief that express authorization is not required and the basis for that belief.

Third, the Court is concerned that the attorneys with Credit Solutions are not taking their ethical obligations seriously enough. For example, Pfeifer stated that aside from lowering his fees for certain clients, he does not regularly undertake efforts to comply with the requirement that lawyers in Wisconsin should aspire to render at least 50 hours of pro bono legal services each year. See Wis. Sup. Ct. R. 20:6.1. The Bankruptcy Court for the Eastern District of Wisconsin operates a Pro Se Help Desk each week to assist pro se chapter 7 debtors, including helping them fill out forms and answering legal questions. The Pro Se Help Desk is staffed by volunteer attorneys, and many of the law firms that represent debtors in this district have one or more attorneys who volunteer their time. Neither Pfeifer nor Lueders is currently on the list of volunteers. For a period of one year, the Court will require one attorney from Credit Solutions to volunteer once each month at the pro se help desk. To meet this requirement, Pfeifer, Lueders, or any other attorney employed by or affiliated with Credit Solutions may volunteer each month, except that Pfeifer must volunteer at least six times over the 12-month period.

* * * * *

Being an attorney for consumer bankruptcy debtors is hard; the issues in this case are easy. There are numerous and sometimes onerous requirements in the Bankruptcy Code and Bankruptcy Rules, and debtors sometimes have trouble understanding the many complexities of the system. But the basic obligations of a lawyer are the same in bankruptcy court as anywhere else. A lawyer can only take the actions authorized by the client, and a lawyer must not represent that a client has signed a document under penalty of perjury that the client has not signed.

Accordingly, IT IS HEREBY ORDERED:

1. Any attorney employed by or affiliated with Credit Solutions, S.C. may not file any document signed by a debtor under penalty of perjury, including petitions, schedules, or any other documents required to be verified under Federal Rule of Bankruptcy Procedure 1008 or unsworn declarations signed pursuant to 28 U.S.C. § 1746 unless the filing includes or is accompanied by the debtor's original signature as described above. This requirement shall be in effect from November 30, 2026 through December 31, 2027.

2. Any attorney employed by or affiliated with Credit Solutions, S.C. may not file an amended or modified chapter 13 plan unless it is accompanied by a declaration signed by the filing attorney as described above. This requirement shall be in effect from November 30, 2026 through December 31, 2027.

3. Starting in January 2027 and continuing through December 2027, an attorney employed by or affiliated with Credit Solutions, S.C. must volunteer with

the Pro Se Help Desk once each month. Attorney Brett Pfeifer must volunteer at least six times during 2027.

4. The Clerk of Court shall deliver a copy of this order (by U.S. Mail or otherwise) to:

a. Hon. Katherine M. Perhach, Chief Judge of the Bankruptcy Court for the Eastern District of Wisconsin;

b. Hon. G. Michael Halfenger, Judge of the Bankruptcy Court for the Eastern District of Wisconsin;

c. Laura D. Steele, Assistant United States Trustee, 517 E. Wisconsin Avenue, Room 430, Milwaukee, WI 53202;

d. Scott Lieske, chapter 13 trustee, P.O. Box 510920, Milwaukee, WI 53203; and

e. Rebecca Garcia, chapter 13 trustee, P.O. Box 3170, Oshkosh, WI 54903.

#####